IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| FOSTER LEE BROWN,<br><br>　　　　Petitioner,<br><br>　　v.<br><br>CMG MORTGAGE, INC. (d/b/a CMG FINANCIAL), ET AL.,<br><br>　　　　Respondents. | CIV. NO. 25-00335 JMS-RT<br><br>ORDER DISMISSING IN PART SECOND AMENDED COMPLAINT, ECF NO. 12, AND DIRECTING SERVICE AS TO CMG MORTGAGE, INC. |

## **ORDER DISMISSING IN PART SECOND AMENDED COMPLAINT, ECF NO. 12, AND DIRECTING SERVICE AS TO CMG MORTGAGE, INC.**

### **I. INTRODUCTION**

This is the court's third screening of pro se Petitioner Foster Lee Brown's ("Brown") Complaint regarding a mortgage secured by real property.[1] On September 5, 2025, the court dismissed Brown's original Complaint, with leave to amend. ECF Nos. 1, 7. Brown then filed an Amended Complaint, which the court screened and dismissed with further leave to amend on October 9, 2025. ECF Nos. 9, 11. On October 28, 2025, Brown filed the Complaint presently before the court—a "Second Amended Complaint for Quia Timet, Quiet Title, and Injunctive Relief" against Defendants CMG Mortgage, Inc. (d/b/a CMG Financial)

---

[1] The court granted Brown in forma pauperis ("IFP") status on September 5, 2025. ECF No. 7.

("CMG Mortgage"), Freedom Mortgage Corporation ("Freedom Mortgage"), and Government National Mortgage Association ("Ginnie Mae"). ECF No. 12 ("SAC"). For the reasons stated below, a Truth in Lending Act ("TILA") claim against CMG Mortgage survives the screening process. All other claims are DISMISSED. Because Plaintiff has been granted IFP status, the court directs service of process as to the TILA claim against CMG Mortgage as set forth below. *See* Fed. R. Civ. P. 4(c)(3).

## II. BACKGROUND

The SAC alleges the following facts:

- On February 7, 2024, Plaintiff executed a promissory note in favor of CMG Mortgage, Inc. for the purpose of securing real property.

- Plaintiff was not advised that his note would be sold, pledged, or securitized into any trust or instrument backed by federal guarantees.

- The note was allegedly transferred into Ginnie Mae REMIC Trust 2024-043 without Plaintiff's knowledge, consent, or legal notice.

- Plaintiff never signed, reviewed, or consented to any Pooling and Servicing Agreement (PSA) or related documentation placing the note into any REMIC trust.

- On June 4, 2024, Plaintiff received a copy of the alleged note from Freedom Mortgage.[2] The document lacked proper endorsement, assignment, or proof of lawful transfer.

- Between April and July 2025, Freedom Mortgage issued repeated foreclosure threats, made harassing calls, and failed to respond to Plaintiff's Qualified Written Requests (QWRs).

- The above actions violated federal statutes (TILA, RESPA, FDCPA) and failed to comply with lawful debt collection procedures and disclosure requirements.

- No defendant has produced the original wet-ink note, nor any proof of a perfected security interest.

- Plaintiff's security instrument has been monetized, traded, and profited upon without his consent or judicial oversight.

- These acts amount to a taking of property and rights secured under the Constitution and common law.

ECF No. 12 at PageID.178–179. Plaintiff alleges TILA violations against all Defendants; a Real Estate Settlement Procedures Act ("RESPA") violation against Freedom Mortgage; a Fair Debt Collection Practices Act ("FDCPA") violation against Freedom Mortgage; state law claims titled "Fraud in the Factum" and "Quia Timet and Quiet Title" against all Defendants; and United States constitutional claims against all Defendants. *Id*. at PageID.179–180.

---

[2] Freedom Mortgage is the loan's servicer. According to a letter from Freedom Mortgage to Plaintiff attached to the SAC, "[t]he loan was originally originated by CMG Mortgage Inc on February 7, 2024. . . . Subsequently, the servicing responsibilities were transferred from CMG Mortgage Inc. to Freedom Mortgage, effective April 1, 2024." ECF No. 12-6 at PageID.257. In screening the SAC, the court may consider any exhibits attached to it. *See Outdoor Media Grp., Inc. v. City of Beaumont*, 506 F.3d 895, 899 (9th Cir. 2007).

The SAC seeks a declaratory judgment that the mortgage is "void ab initio and unenforceable," a permanent injunction barring "foreclosure or collection without the production of the original, properly endorsed note," an accounting and disgorgement of profits, and monetary damages. *Id*. at PageID.180.

### III. STATUTORY SCREENING

The court must screen each civil action commenced under 28 U.S.C. § 1915(a) and order the dismissal of any complaint that is "frivolous or malicious; . . . fails to state a claim on which relief may be granted; or . . . seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); *see also Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (stating that § 1915(e) "not only permits but requires" the court to dismiss sua sponte an IFP complaint that fails to state a claim).

In considering whether a complaint fails to state a claim, the court must set conclusory factual allegations aside, accept non-conclusory factual allegations as true, and determine whether these allegations state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–80 (2009). A complaint that lacks a cognizable legal theory or alleges insufficient facts under a cognizable legal theory fails to state a claim. *See UMG Recordings, Inc. v. Shelter Cap. Partners*

*LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013) (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)).

Plaintiff is appearing pro se; consequently, the court liberally construes the SAC and resolves all doubts in Plaintiff's favor. *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (explaining that "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers").

## IV.  DISCUSSION

### A.  Loan Securitization and Failure to Provide a "Wet-Ink" Note

As an initial matter, the central focus of the SAC—that "[n]o defendant has produced the original wet-ink note" or "any proof of a perfected security interest," and that Brown's "security instrument has been monetized, traded, and profited upon without his consent or judicial oversight," ECF No. 12 at PageID.179—cannot give rise to any cause of action as a matter of law.

"[S]ecuritization in general does not give rise to a cause of action" and various courts, including this one, have "rejected that securitization of a mortgage loan provides the mortgagor a cause of action." *Duarte v. Bank of Am.*, 2011 WL 1399127, at *7 (D. Haw. Apr. 12, 2011); *see also Rodenhurst v. Bank of Am.*, 773 F. Supp. 2d 886, 898 (D. Haw. 2011) (rejecting the claim that securitization of a loan renders the note and mortgage unenforceable); *Vitale v. Wells Fargo Bank*

5

*Nat'l Ass'n*, 2024 WL 3012810, at *5 (N.D. Cal., June 14, 2024) (rejecting legally insufficient "show me the note" and "securitization" theories); *Washington v. Eustis Mortg. Corp.*, 2024 WL 4803414, at *2 (D. Ariz. Sept. 20, 2024) (same); *Whipple v. Mann Mortg., LLC*, 2014 WL 1404901, at *6 (D. Mont. Apr. 10, 2014) (stating that courts "have consistently rejected mortgagors' theories asserting that the sale and securitization of a loan invalidates the power of sale authorized in a deed of trust" and "to the extent Whipple's claims for relief are predicated upon his securitization theory those claims fail"). Further, courts have rejected the SAC's "show-me-the-note" theory. *See, e.g.*, *Del Piano v. Mortg. Elec. Registration Sys., Inc.*, 2012 WL 621975, at *10 (D. Haw. Feb. 24, 2012); *Burke v. Countrywide Mortg. Ventures, LLC*, 2017 WL 6499236, at *9 (D. Haw. Dec. 19, 2017).

Given this law, all claims related to either the alleged unlawful securitization of the loan or the failure to produce a wet-ink copy of the note—including claims for "Fraud in The Factum," "Quia Timet and Quiet Title" and "Constitutional Violations"—are DISMISSED.

**B.     TILA Claims as to All Defendants**

The SAC alleges the following TILA claims: a violation of 15 U.S.C. § 1638 against CMG Mortgage; a violation of 15 U.S.C. § 1641 against Freedom Mortgage; and a violation against Ginnie Mae (without a citation to any particular TILA provision).

Section 1638 requires lenders to make various disclosures in certain consumer credit transactions. *See* 15 U.S.C. § 1638(a). TILA generally requires these disclosures to be "made before the credit is extended" or "before consummation of the transaction." 15 U.S.C. § 1638(b)(1), (2)(A); 12 C.F.R. § 227.17(b). Specifically, TILA requires "creditors to provide borrowers with clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the borrower's rights." *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998).[3] Here, the SAC alleges that "CMG Mortgage failed to disclose material terms of the finance agreement, including the APR, total payments, and intention to securitize the note." ECF No. 12 at PageID.179. The SAC states a plausible TILA claim against CMG Mortgage to the extent it alleges that CMG Mortgage failed to disclose matters mandated by TILA and Regulation Z, but is DISMISSED to the extent it alleges that CMG Mortgage failed to disclose its intent to securitize the mortgage.[4]

---

[3] Under Regulation Z, for closed-end credit such as a mortgage, a creditor must disclose certain items, including but not limited to the amount financed, the finance charge, the annual percentage rate, the payment schedule, the total payments, any demand feature, the total sales price, whether a prepayment penalty applies, and late payment terms. 12 C.F.R. § 226.18.

[4] TILA does not require a disclosure that a loan may be subject to future securitization. 15 U.S.C. § 1638(b); *see also Lane v. Rocket Mortg. LLC*, 2025 WL 2229923, at *4 (D. Ariz. Aug. 5, 2025) ("Facts about the securitization of the loan refinance contract and the existence of a cash collateral deposit are not material terms that a creditor is required to disclose under TILA . . . . Nor do they fall under the subsequent disclosure requirements TILA imposes for refinancing or certain mortgage transactions."); *Bryant v. GM Fin.*, 2023 WL 11825780, at *2 (D.S.C. Oct. 27, 2023) (noting that courts repeatedly reject as "frivolous" arguments that the
(*continued . . .*)

7

As for the TILA claim against Freedom Mortgage, 15 U.S.C. § 1641(g) "requires that any new creditor or assignee of the debt in question notify the borrower, in writing, of the transfer or assignment of the loan." *Vargas v. JP Morgan Chase Bank, N.A.*, 30 F. Supp. 3d 945, 950 (C.D. Cal. 2014). Here, according to documents attached to the SAC, Freedom Mortgage is the loan *servicer*, not the *creditor*. See ECF No. 12-6 at PageID.257 (stating, in a June 16, 2025 letter from Freedom Mortgage to Brown, that Freedom Mortgage became the loan servicer effective April 1, 2024). As a loan servicer, Freedom Mortgage is not a TILA creditor. *See Stafford v. Taffet*, 2025 WL 1736831, at *3 (D. Or. June 23, 2025) (stating that TILA damages are not available against a mortgage loan servicer); *Taylor v. Wells Fargo Bank, N.A.*, 2010 WL 11552929, at *3 (C.D. Cal. Sept. 15, 2010); *Cootey v. Countrywide Home Loans, Inc.*, 2011 WL 4853333, at *3 (D. Haw. Oct. 12, 2011) (stating that TILA disclosure requirement "does not

---

TILA requires lenders to disclose that they may securitize a loan); *Bendeck v. U.S. Bank Nat'l Ass'n, C/A*, 2017 WL 2726692, at *5 (D. Haw. June 23, 2017) ("Plaintiff's claims are also based, in part, on a securitization theory. Variations of the securitization theory provide that the mere securitization of a note and/or the separation of the note and mortgage renders the note unenforceable. This court and numerous others have rejected similar claims.") (cleaned up); *Talley-Smith v. Mission Lane, LLC*, 2025 WL 2748870, at *5 (N.D. Ind. June 6, 2025) ("[L]enders subject to the TILA are under no obligation to disclose that they may securitize a loan because doing so does not change the relationship between the creditor and debtor."); *Roper v. BMO Bank N.A.*, 2024 WL 4579766, at *2 (S.D. Fla. Oct. 4, 2024) (same); *Milner v. New Am. Funding LLC*, 2024 WL 1957342, at *3 (N.D. Ga. Apr. 1, 2024), *report and recommendation adopted*, 2024 WL 4029896 (N.D. Ga. Apr. 30, 2024); *Robinson v. Moynihan*, 2021 WL 2346107, at *5 (E.D. Va. June 8, 2021) (same).

include mortgage brokers and servicers"); *see also* 15 U.S.C. § 1641(f).  The TILA claim against Freedom Mortgage is DISMISSED.

And as for the TILA claim against Ginnie Mae, the SAC states that Ginnie Mae "acted as an undisclosed investor, reaping financial benefit from Plaintiff's instrument without providing notice or disclosure as required under TILA and Regulation Z."  ECF No. 12 at PageID.179.[5]

Ginnie Mae is wholly owned by the United States, within the Department of Housing and Urban Development.  12 U.S.C. § 1717(a)(2)(A).  Congress has immunized Ginnie Mae from suit for injunctive relief or "other similar process[es]."  12 U.S.C. § 1723a(a).  Thus, the court lacks jurisdiction over any claim against Ginnie Mae seeking injunctive relief or recission.  Further, Ginnie Mae "shall not be liable for the actions of the lender including, but not limited to, negligence, fraud, abuse, misrepresentation or misuse of funds, property condition, or violations of usury laws."  7 C.F.R. § 3565.505.  Thus, Ginnie Mae cannot be found liable based on the acts or omissions of a lender.

"Under TILA's Regulation Z, a lender, assignee, or loan servicer must, in response to a borrower's request, provide an accurate statement of the total outstanding balance that would be required to pay the consumer's obligation

---

[5] To the extent that this claim is based on the securitization of the mortgage, it fails for the reasons stated above.

in full as of a specific date based on the best information available." *McLaughlin v. Wells Fargo Bank, NA*, 2015 WL 10889993, at *1 (N.D. Cal. Oct. 29, 2015) (internal quotation marks omitted). A creditor is a "person who regularly extends consumer credit that is subject to a finance charge or is payable by written agreement in more than four installments (not including a down payment), and to whom the obligation is initially payable, either on the face of the note or contract, or by agreement when there is no note or contract." 12 C.F.R. § 226.2(a)(17)(i); 15 U.S.C. § 1602(g). Ginnie Mae does not fit this definition of creditor—instead, "Ginnie Mae guarantees the performance of the issuer rather than the underlying collateral, so it neither buys loans nor issues its own securities. In return for the guarantee, which makes the securities more marketable to investors, the issuer pays a fee and gives Ginnie Mae a conditional interest in the underlying mortgages." *Hoffman v. Phelan Hallinan, LLP*, 2016 WL 4089163, at *4 (E.D. Pa. Aug. 2, 2016) (internal citations omitted); *see also First Mortg. Corp. v. United States*, 961 F.3d 1331, 1334 (Fed. Cir. 2020) (explaining that Ginnie Mae guarantees the payment of principal and interest on securitized mortgages sold on the secondary market). In short, based on the facts set forth in the SAC, Ginnie Mae is not a

creditor under TILA and Regulation Z.[6]  The TILA claim against Ginnie Mae is DISMISSED.

## C. RESPA Claim as to Freedom Mortgage

RESPA provides that borrowers must be provided certain disclosures relating to the mortgage loan settlement process.  *See generally* 12 U.S.C. § 2601.  Loan servicers have a duty to respond to Qualified Written Requests ("QWR") from borrowers asking for information relating to the servicing of their loan.  12 U.S.C. § 2605(e).  Loan servicers have 30 days (excluding weekends and holidays) after the receipt of a QWR to respond to the borrower's inquiry.  12 U.S.C. § 2605(e)(2).  Failure to comply entitles a borrower to "any actual damages to the borrower as a result of the failure," but only "to recover for the loss that relates to the RESPA violation, not for all losses related to foreclosure activity."  *Diunugala v. JPMorgan Chase Bank, N.A.*, 81 F. Supp. 3d 969, 981 (S.D. Cal. 2015) (quoting 12 U.S.C. § 2605(f)(1) and collecting cases).

Here, the SAC simply alleges that Defendant Freedom Mortgage

---

[6] The Federal Reserve Board, in publishing a Regulation Z interim final rule and request for comment, explained that Ginnie Mae guarantees securities that are collateralized by mortgage loans, and legal title to the loans is not conveyed to Ginnie Mae unless the issuer of the securities defaults on its obligations.  Given this backdrop, the Federal Reserve Board opined that the requirements of 12 C.F.R. § 226.39 (relating to mortgage transfer disclosures) "do not apply to Ginnie Mae until it finds the issuer in default and acquires legal title to the loans."  Federal Register, Vol. 74, No. 223, pp. 60146 (November 20, 2009).  Here, the SAC does not allege that the issuer of the securitized loans is in default or that Ginnie Mae has acquired legal title to Brown's loan.

11

"issued repeated foreclosure threats, made harassing calls, and failed to respond to [his QWRs]."  ECF No. 12 at PageID.179 (alleging also that Freedom Mortgage "failed to respond to [QWRs], misrepresented debt amounts, and issued false foreclosure threats").  Nowhere, however, does the SAC allege that Brown incurred any actual damage as a result of Freedom Mortgage's purported failure to respond to his QWRs.[7]  Section 2605's "pleading requirement has the effect of limiting the cause of action to circumstances in which plaintiff can show that a failure to respond or give notice has caused them *actual* harm."  *Diunugala*, 81 F. Supp. 3d at 981 (quoting *Sherpherd v. Am. Home Mortg. Servs., Inc.*, 2009 WL 4505925, at *3 (E.D. Cal. Nov. 20, 2009) (emphasis added)); *see also Dandridge v. Select Portfolio Servicing, Inc.*, 2023 WL 4053408, at *6 (C.D. Cal. June 15, 2023) (reiterating that a RESPA claim cannot survive a motion to dismiss unless the plaintiff pleads facts of actual harm due to a defendant's failure to respond to the QWR), *aff'd*, 2024 WL 2077783 (9th Cir. May 9, 2024); *Corazzini v. Litton Loan Servicing LLP*, 2010 WL 6787231, at *12 (N.D.N.Y. June 15, 2010) (stating that courts have "consistently dismissed complaints under RESPA if they do not allege actual damages or state merely that in a conclusory fashion the defendant

---

[7] And, to date, there has been no foreclosure action filed against the property according to state court records.  *See* eCourt Kokua* https://www.courts.state.hi.us/legal_references/records/jims_system_availability [https://perma.cc/B9HX-RNST] (entering in "Party Search," "Brown" and "Foster") (indicating that in July 2024, Brown filed a "Complaint to Quiet Title" against CMG Mortgage Financial in the Fifth Circuit Court, but no foreclosure proceedings filed against him).

caused damages to the plaintiff") (quoting *In re Griffin*, 2010 WL 3928610, *4 (Bankr. S.D.N.Y. Aug. 31, 2010)); *Sykes v. Pioneer Title of Ada Cnty.*, 2013 WL 458343, at *8 (D. Idaho Jan. 7, 2013), *report and recommendation adopted*, 2013 WL 587504 (D. Idaho Feb. 14, 2013) (same).[8]  The RESPA claim against Freedom Mortgage is DISMISSED.

D.   **FDCPA as to Freedom Mortgage**

The FDCPA prohibits "debt collectors from making false or misleading representations and from engaging in various abusive and unfair practices." *White v. Am. W. Lender Servs. LLC*, 2025 WL 1359124, at *6 (N.D. Cal. May 8, 2025) (quoting *Heintz v. Jenkins*, 514 U.S. 291, 292 (1995) (cleaned up)).  An FDCPA cause of action has four elements: (1) the plaintiff is a "consumer"; (2) the debt arises out of a transaction entered into for personal purposes; (3) the defendant is a "debt collector"; and (4) the defendant violated one of the provisions contained in 15 U.S.C. §§ 1692a–1692o." *Warta v. Porter, McGuire, & Kiakona, LLP*, 622 F. Supp. 3d 971, 983 (D. Haw. 2022) (internal citations omitted).  Under 15 U.S.C. § 1692a(6), "debt collector" means:

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or

---

[8] A RESPA violation can give rise to statutory damages only if a plaintiff establishes a pattern and practice of RESPA violations.  12 U.S.C. § 2605(f)(1)(B).  Here, there is no allegation of a pattern and practice of RESPA violations by Freedom Mortgage.

13

> indirectly, debts owed or due or asserted to be owed or due another. . . . The term does not include—
>
> . . . .
>
> (F) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement; (ii) concerns a debt which was originated by such person; (iii) concerns a debt which was not in default at the time it was obtained by such person; or (iv) concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor.

In interpreting this definition, courts have consistently held that the FDCPA does not apply to mortgage servicing companies, or assignees of the mortgage debt, if the loan was not in default at the time it was obtained. *See, e.g., Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985) ("The legislative history of section 1692a(6) indicates conclusively that a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned."); *Soriano v. Wells Fargo Bank, N.A.*, 2012 WL 1536065, at *8 (D. Haw. Apr. 30, 2012) ("[The] Wells Fargo Defendants are not 'debt collectors' under the FDCPA if they were loan servicers that were servicing the loans before they went into default and thereafter sought to collect the debt."); *Fed. Nat'l Mortg. Ass'n v. Kamakau*, 2012 WL 622169, at *8 (D. Haw. Feb. 23, 2012) (stating that "original lenders, creditors, mortgage servicing companies, and mortgage brokers generally do not

14

qualify as 'debt collectors' [under the FDCPA]"); *Justice v. Ocwen Loan Servicing, LLC*, 2014 WL 526143, at *4 (S.D. Ohio Feb. 7, 2014) ("In other words, if Ocwen acquired the servicing for the Loans before they were in default, then it is not a debt collector under the FDCPA. But if Ocwen acquired the servicing for the Loans after they were in default, it is a debt collector under the FDCPA."); *Amini v. Bank of Am. Corp.*, 2013 WL 1898211, at *4 (W.D. Wash. May 6, 2013) (stating that a mortgage servicer is a "'debt collector' if the debt was in default when it took over the servicing obligations," even if the ownership of the loan remains with the original lender); *Heejoon Chung v. U.S. Bank*, N.A., 250 F. Supp. 3d 658, 682 (D. Haw. 2017) (similar).

Here, Freedom Mortgage began servicing the loan on April 1, 2024. ECF No. 12-6 at PageID.257. But the loan was not delinquent at that time—it became delinquent a year later, on April 1, 2025. *See, e.g, id.* at PageID.258 (stating, in June 2, 2025 letter from Freedom Mortgage to Brown, that the loan became in arrears beginning in April 2025). Because the loan was not in default at the time Freedom Mortgage began to service the loan, Freedom Mortgage is not a debt collector under the FDCPA. As a result, the FDCPA claim against Freedom Mortgage is DISMISSED.

15

## V. <u>SERVICE ORDER</u>

Based on the foregoing, the court DIRECTS service of the SAC as to CMG Mortgage in accordance with the following:

(1)  The Clerk of Court is directed to send the United States Marshal a copy of this Order, a copy of the SAC, ECF No. 12, and completed summonses for Defendant CMG Mortgage.  The United States Marshal shall retain these documents for use in the event that personal service is required for CMG Mortgage.

(2)  The Clerk of Court is directed to send to Brown a USM-285 form, a Notice of Lawsuit and Request for Waiver of Service of Summons form (AO 398), a Waiver of Service of Summons forms (AO 399), an instruction sheet, and a copy of the SAC.  Brown shall then complete the forms as directed, make additional copies of the SAC, and submit these documents to the United States Marshal in Honolulu, Hawaii, for service on Defendant CMG Mortgage.  *See* Fed. R. Civ. P. 4(h).  Brown is responsible for obtaining the necessary information to complete the form.

(3)  Upon receipt of these documents, the United States Marshal shall serve Defendant CMG Mortgage a copy of the SAC, a completed Notice of Lawsuit and Request for Waiver of Service form (AO 398), and a completed

Waiver of Service of Summons form (AO 399), as directed by Brown pursuant to Rule 4 of the Federal Rules of Civil Procedure without payment of costs.

(4)  Defendant CMG Mortgage shall have 30 days after the requests are sent to return the waivers to the United States Marshal, who shall file the waivers with the court.  *See* Fed. R. Civ. P. 4(d)(1)(F).  If CMG Mortgage fails to do so within that time, the United States Marshal shall effect personal service pursuant to Fed. R. Civ. P. 4(e).  *See also* 28 U.S.C. § 566(c).  In the absence of good cause, if CMG Mortgage fails to return a Waiver of Service of Summons it will be required to pay the expenses of service in accordance with the provisions of Fed. R. Civ. P. 4(d)(2).

(5)  If CMG Mortgage, before being served with process, timely returns a waiver, it need not serve an Answer or otherwise respond to the complaint until within 60 days after the request was sent.  Fed. R. Civ. P. 4(d)(3).  Failure to respond may result in entry of a default judgment.

(6)  Brown shall promptly inform the court of any change of address by filing a "Notice of Change of Address."  The notice shall contain only information about the change of address and its effective date and shall not include requests for other relief.  Failure to file such notice may result in the dismissal of the action for failure to prosecute under Fed. R. Civ. P. 41(b).

(7)  After the SAC is served and CMG Mortgage has filed a

response or entered an appearance, Brown's documents are deemed served on CMG Mortgage or its attorneys who participate in the court's Case Management Electronic Case Filing (CM/ECF) system. The United States Marshal is not responsible for serving documents after service of the operative pleading.

(8) Brown shall serve a copy of all further pleadings or documents submitted to the court upon CMG Mortgage or its attorneys. He shall include, with any original paper to be filed with the Clerk of Court, a certificate stating the date that an exact copy of the document was mailed to CMG Mortgage or its counsel. Any paper received by a District Court Judge or Magistrate Judge that has not been filed with the Clerk of Court or which does not include a certificate of service will be disregarded.

(9) Brown is notified that, until service of the SAC has been effected, he should not file motions or other documents with the court. He is further notified that he must comply with the Federal Rules of Civil Procedure and the Local Rules for the District of Hawaii.

## VI. **CONCLUSION**

The TILA claim against CMG Mortgage, as limited by this Order, may proceed. All other claims are DISMISSED. Given the nature of the dismissed claims, and because Brown has been given two opportunities to amend his complaint, the court determines that granting further leave to amend would be

futile.  *See, e.g.*, *Lathus v. City of Huntington Beach*, 56 F.4th 1238, 1243 (9th Cir. 2023) ("Although leave to amend should be given freely . . . denying leave is not an abuse of discretion if 'it is clear that granting leave to amend would have been futile.'") (quoting *Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc*., 368 F.3d 1053, 1061 (9th Cir. 2004)).

        IT IS SO ORDERED.

        DATED:  Honolulu, Hawaii, November 20, 2025.



        /s/ J. Michael Seabright
        J. Michael Seabright
        United States District Judge